**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Riki Rashaad Muhammad,

Plaintiff,

vs.

Arizona Department of Corrections, et al.,

Defendants.

No. CV-11-1890-PHX-SMM (LOA)

**ORDER**

This matter is before the Court on Plaintiff's *pro se* Second Amended Civil Rights Complaint by a Prisoner pursuant to 42 U.S.C. § 1983. (Doc. 25) On July 17, 2012, Magistrate Judge Anderson granted Plaintiff's Motion for Leave to Amend Complaint, doc. 22, authorizing Plaintiff to file his Second Amended Complaint. (Doc. 23) Judge Anderson stated in the order the Second Amended Complaint would be screened pursuant to 28 U.S.C. § 1915A(a) in a separate order. (Doc. 23 at 2) This is that Order.

The Court screened Plaintiff's First Amended Complaint, doc. 9, in an order issued on February 28, 2012. (Doc. 10) The Court dismissed without prejudice Counts One through Six. (Doc. 10 at 13) In addition, the Court dismissed without prejudice Defendants Ryan, Linderman, J. Lind, Rendone, Donnally, Klausner, Krause and C. Lind. (*Id.*) Defendant "Aames" was directed to answer Count Seven, the only count determined to have stated a claim. The docket reflects Defendant Ams[1] waived service of process on the First Amended Complaint, though no answer or other response to the First Amended Complaint has been filed. (Doc. 21)

[1] Defendant mistakenly identified Defendant Ams as "Aames." (Doc. 9 at 1, 4)

**I. Statutory Screening of Prisoner Complaints**

A district court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). A court must dismiss a complaint or portion thereof if plaintiff raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 680.

As the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

**II. Second Amended Complaint**

An amended complaint supersedes its original complaint. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Causes of action alleged in an original complaint, which are not alleged in an amended complaint, are waived. *King v. Atiyeh*, 814 F.2d at 567. Thus, Plaintiff's Second Amended Complaint supersedes the First Amended Complaint filed in December 2011. Like the First Amended Complaint, Plaintiff alleges seven counts in the Second Amended Complaint for violations of his religious exercise and equal protection rights, and for threats to his safety. (Doc. 25 at 5-30) Plaintiff names the following eight defendants in the Second Amended Complaint: Arizona Department of Corrections ("ADOC"); Charles Ryan, Director; Laura Krause, Division Director for Support Services; Mike Linderman, Religious Services Program Administrator; Jeff Lind, Chaplain; C.O.II C. Lind, Corrections Officer; Laura Donnally, Dietician; C.O.III Ams, Counselor. (Doc. 25 at 3-4[2]) Plaintiff seeks compensatory, punitive and injunctive relief. (Doc. 25 at 31)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). In addition, to state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

In Counts One through Six, Plaintiff alleges violations of his religious exercise and equal protection rights. A state inmate may bring a claim for violation of his religious exercise rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5, and the First Amendment. RLUIPA prohibits the government

[2] The page number references to Plaintiff's Second Amended Complaint, doc. 25, are to the page numbers generated by the District Court's electronic filing system, *not* the pre-printed page numbers on the complaint form or those written in by Plaintiff.

from imposing a substantial burden on the religious exercise of an institutionalized person unless the government establishes the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1) - (2). Therefore, to state a claim under RLUIPA, a plaintiff must allege facts showing governmental action has substantially burdened the exercise of a plaintiff's religion without a compelling governmental interest and by the least restrictive means. *See Guam v. Gurerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002). "[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quotations omitted). Thus, an institutionalized person's religious exercise is substantially burdened "'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief.'" *Id.* (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (ruling in First Amendment context)).

Though convicted of one or more crimes, "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). The free exercise of constitutional rights, however, are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *Id.* To state a First Amendment free exercise claim, a plaintiff must allege that a defendant substantially burdened his religious practice without a justification reasonably-related to legitimate penological interests. *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *Warsoldier*, 418 F.3d at 995 (citing *Thomas*, 450 U.S. at 717-18 (pressure on exercise must be substantial)); *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (same). The religious practice or exercise at issue must be rooted in sincerely-held religious belief, not in "'purely secular' philosophical concerns." *Malik*, 16 F.3d at 333 (internal citation omitted).

In addition to alleging violations of his religious exercise rights, Plaintiff also asserts his equal protection rights were violated. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated be treated alike. U.S. Const., amend. XIV; *see also City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). A state practice which interferes with a fundamental right or discriminates against a suspect class of individuals is subject to strict scrutiny. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976); *see also City of Cleburne*, 473 U.S. at 441. Absent allegations he is a member of a suspect class or a fundamental right has been violated, a plaintiff must allege facts to support his claim he was intentionally treated differently from others who are similarly situated without a reasonable basis therefor. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Conclusory allegations do not suffice. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

**III. Failure to State a Claim**

**A. Arizona Department of Corrections**

As noted above, Plaintiff names ADOC as a defendant in this action. Under the Eleventh Amendment to the Constitution of the United States, however, neither a state nor a state agency may be sued in federal court without its consent. *Pennhurst St. Sch. & Hosp.*, 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Arizona has not manifested the intention to waive its sovereign immunity under the Eleventh Amendment from suit in federal court. Moreover, "[s]tate agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit." *Morgan v. Arizona*, 2007 WL 2808477, at *8 (D. Ariz. 2007) (citations omitted). "As a statutorily created state entity, ADOC has only those attributes and powers the Legislature has prescribed for it." *Id.* (citing *Cox v. Pima County Law Enforcement Merit Sys. Counsel*, 27 Ariz. App. 494, 495, 556 P.2d 342, 343 (Az. Ct. App. 1976)). "The enabling legislation for ADOC does not authorize it to sue or be sued in its own right as a separate and distinct legal entity." ADOC may not ne sued

because it is not a separate and distinct legal entity. For these reasons, ADOC will be dismissed from this action.

**B. Count One**

Plaintiff alleges in Count One of the Second Amended Complaint that Defendants Ryan and J. Lind are violating his rights under the Free Exercise Clause of the First Amendment and RLUIPA by prohibiting him from congregating with other Ahlus-Sunnah Wal-Jamaah ("ASWJ") Muslim inmates five times daily for prayer. (Doc. 25 at 5-7). Plaintiff alleges Defendants "are acting without a valid penological interest, not by the least restrictive means and with deliberate indifference, forcing [Plaintiff] and all ASWJ Muslims to perform daily prayers 'individually[,]' an act forbidden by [Plaintiff's] beliefs." (*Id.* at 5)

Plaintiff raised essentially the same claim in Count One of his First Amended Complaint. In the Second Amended Complaint, however, he adds more facts, claiming, among other things, there are three other "ASWJ adherents" at his housing unit who would like to perform the five daily prayers together. Plaintiff also adds two pages of allegations regarding his requests for the group prayers through the inmate grievance system. Plaintiff alleges he informed Defendant Ryan that ASWJ Mulims require five daily prayers to be performed in congregation. Plaintiff asserts he submitted signed documentation from an ASWJ Imam regarding ASWJ tenets, including the daily group prayers. Plaintiff alleges Defendant Ryan responded to his grievance, asserting that Islamic advisors to ADOC have indicated these prayers need not be done in a group setting, and that ADOC has a compelling interest in not allowing inmates to group together without appropriate supervision.

Plaintiff also alleges he requested approval to congregate for daily prayers from Defendant J. Lind, which was denied. Plaintiff further alleges Defendant Lind stated at a "town hall meeting" that such daily prayers are to be performed in inmates' individual living areas. Finally, Plaintiff alleges both Ryan and Lind are aware that security at medium custody housing units, such as his, renders prayer gatherings feasible, and he can provide evidence of feasability from a security and operational standpoint.

In the prior screening order, the Court determined that "[b]oth logistics and security provide a more plausible reason for prohibiting *any* group of inmates from congregating several times daily for prayer, than does discrimination or an effort to interfere with religious exercise." (Doc. 10 at 5) Consequently, the Court dismissed Count One for failure to state a claim. (*Id.*)

The Court finds that Plaintiff's additional factual allegations in Count One do not alter the Court's prior determination. Allowing any group of inmates to congregate five times every day, even for prayer, creates potential security risks, as Plaintiff acknowledges Defendant Ryan explained to him in a grievance response. The Court, therefore, finds Plaintiff's allegations fail to show a substantial burden on the exercise of his religion without a compelling governmental interest and by the least restrictive means. Moreover, Plaintiff's unsupported, conclusory contention that five daily group prayers are feasible from a security and operational standpoint is insufficient to overcome ADOC's compelling governmental interest in maintaining the security of the housing unit. Accordingly, Count One will be dismissed with prejudice for failure to state a plausible claim under Rule 12(b)(6), Fed.R.Civ.P.

**C. Count Five**

Plaintiff alleges in Count Five that Defendants Ryan, Krause, Linderman, J. Lind and C.O.II C. Lind are denying his right to free exercise of religion in violation of the First Amendment and RLUIPA by failing to provide an appropriate area for performing individually the five daily prayers mandated by his religion. (Doc. 25 at 21-24) Plaintiff contends that, after he had received permission to use the dormitory dayroom to perform his morning prayer, C.O.II Lind intervened and told him prayers are to be done at his cubicle. Plaintiff explains he told C.O.II Lind he received permission to access the dayroom "due to issues such as (1) noise levels, (2) vulgarities/obscenities, (3) smoking and (4) Muslims' need to face southeast during prayer." Plaintiff alleges he was placed on disciplinary report for performing prayers in the dayroom.

Plaintiff further contends he notified, through the inmate grievance procedure, Defendants J. Lind, Krause and Linderman about the inadequacy of restricting the daily prayers to inmates' cubicle areas. He alleges the four factors identified above make it impossible to perform prayers properly in his cubicle because his prayers require "a significant amount of recitation and due concentration." He further claims various security staff have acknowledged the availability of dayrooms and other spaces for the daily prayers, which last approximately five minutes. Plaintiff claims that Defendants J. Lind, Krause and Linderman have rejected his requests to use the dayroom or other available space for his daily prayers.

Because Plaintiff did not raise this claim in his First Amended Complaint, the Court did not address it in the prior Screening Order. The Court finds Plaintiff's allegations in Count Five fail to show a substantial burden on his religious practice. Although Plaintiff may prefer to conduct his daily prayers in an alternative setting, he has not demonstrated that being required to perform his daily prayers in his cubicle substantially burdens his ability to practice his religion. His complaints of noise levels, vulgarities, smoking, and the need to face southeast are vague because he fails to provide any specific information about the impact these factors have on his ability to pray. For example, Plaintiff fails to explain why he cannot face southeast when praying in his cubicle, nor does he allege that the noise, vulgarities and smoking are at such high levels that he cannot conduct his prayers. While Plaintiff's allegations may show that praying in his cubicle exposes him to minor disturbances, the allegations do not establish a substantial burden on his religious practice. For these reasons, Count Five will be dismissed with prejudice.

**D. Count Six**

Plaintiff alleges in Count Six that Defendants Ryan, Donnally and J. Lind are denying his right to free exercise of religion in violation of the First Amendment and RLUIPA by failing to include fruits and vegetables in the meals for fasting Muslim inmates during Ramadan. (Doc. 25 at 25-28) He also alleges a violation of the Fourteenth Amendment, presumably the Equal Protection Clause, though he fails to so indicate.

Plaintiff contends he and all fasting Muslim inmates were deprived of fruit for all 30 days of Ramadan in 2011 and vegetables for 22 of those days. Plaintiff claims he requested "to have readily-available diced-fruit and vegetable sticks added to the 'sunset' dinner sacks," but his requests were rejected. Plaintiff contends Defendant J. Lind responded to his request, stating there is no religious requirement for enhanced portions. He contends Defendant Ryan responded by stating the meals provided every day, including during Ramadan, meet nutritional standards and there was no religious or nutritional reason to provide the requested items. Regarding Defendant Donnally, the canteen dietician, Plaintiff contends Donnally failed to respond when Plaintiff inquired why fruits and vegetables are not included in the meals for Ramadan participants and whether the meals that were provided to Ramadan participants meet the recommended daily allowance for vitamins and minerals.

In the prior screening order, the Court dismissed this claim because Plaintiff failed to allege specific facts to connect the claim to specific Defendants. Although Plaintiff has arguably cured that defect, the Court finds Plaintiff's allegations in Count Six still fail to state a claim for a violation of the First Amendment, RLUIPA or the Equal Protection Clause. Plaintiff fails to allege that excluding fruits and vegetables from his meals during Ramadan substantially burdened his religious exercise. He does not claim, for example, he could no longer fast as a result of not having fruits and vegetables, nor does Plaintiff allege the meals served to him during Ramadan were nutritionally inadequate, and the responses to his grievances suggest otherwise. Plaintiff claims he suffered hunger, fatigue, malnourishment and weight loss during Ramadan, but he fails to allege those conditions resulted from the exclusion of fruits and vegetables. At best, Plaintiff's allegations simply show that, during Ramadan, he did not receive in his pre-sunrise and post-sunset meals certain foods he prefers to eat. For these reasons, Count Six will be dismissed with prejudice.

## IV. Claims for Which an Answer Will be Required

### A. Count Two

Plaintiff alleges in Count Two that Defendants Ryan, Krause, Linderman and J. Lind denied him free exercise of his religion in violation of the First Amendment and RLUIPA.

(Doc. 25 at 8-11) He also alleges a violation of the Fourteenth Amendment, presumably the Equal Protection Clause, though he fails to so indicate. Plaintiff asserts that during the month of Ramadan in 2011 (August 1 to August 30), he and other ASWJ Muslims fasted each day from sunrise to sunset, as required by their faith. Plaintiff contends he was denied a pre-dawn meal during that month. Plaintiff claims he was provided a "pre-sunrise" meal, but because it was provided after the break of dawn, his beliefs as an ASWJ Muslim prohibited him from eating it. Plaintiff explains he attempted to resolve the issue by contacting Defendants Ryan, Krause, Linderman and J. Lind and informing them his fast as an ASWJ Muslim, unlike other fasting Muslims, began before the pre-sunrise meal was served. He alleges he was granted no relief when he requested an earlier meal to comport with his religious beliefs.

In the prior screening order, the Court found that Plaintiff:

> fails to allege facts to support that any Defendant was involved with the failure to provide Muslim inmates their morning meals during Ramadan prior to sunrise. That is, he fails to allege specific facts to connect any Defendant to the failure to accommodate his faith by providing the morning meal prior to sunrise. For example, Plaintiff does not allege when, where, and how he notified any Defendant of the Ramadan fast, and failures to accommodate the fast, and Defendants' responses.

(Doc. 10 at 6)

Here, Plaintiff's new allegations regarding his requests to Defendants Ryan, Krause, Linderman and J. Lind for an accommodation are sufficient to overcome the deficiencies in the First Amended Complaint. Plaintiff explains in detail who he contacted, when, and how they failed to accommodate his request for an earlier morning meal during Ramadan. The Court finds Plaintiff's allegations in Count Two state a claim for a violation of the Equal Protection Clause, the First Amendment Free Exercise Clause and RLUIPA against Defendants Ryan, Krause, Linderman and J. Lind. The Court will, therefore, require Defendants to answer Count Two.

**B. Count Three**

Plaintiff alleges in Count Three that Defendants Linderman and J. Lind denied him the free exercise of his religion in violation of the First Amendment, the Fourteenth Amendment Equal Protection Clause and RLUIPA by failing to provide him with a proper

religious diet. (Doc. 25 at 12-16) Plaintiff contends that, as an ASWJ Muslim, he is required to eat a "Halal" diet, or in the alternative, a "kosher" diet. He alleges kosher diets are readily provided to Jewish inmates.

Plaintiff claims he received a vegetarian diet, beginning in 2003. In May 2010, Plaintiff submitted a request to Defendant Linderman, seeking a kosher diet, but he did not receive a response. In July 2011, Plaintiff arrived at the Tonto Unit. Defendant J. Lind then cancelled the vegetarian diet Plaintiff had been receiving because Plaintiff had purchased non-Halal or non-kosher meat items a few times the previous year. On July 29, 2011, Plaintiff submitted a request for a kosher diet. Defendants Linderman and Lind denied the request based on Plaintiff's purchases of non-Halal or non-kosher meat items.

On October 28, 2011, after Plaintiff submitted grievances and filed this case, Defendants recommended and approved Plaintiff to receive a vegan diet. Plaintiff began receiving the vegan diet on November 18, 2011, but within two days, he began to suffer excruciating gastrointestinal pain, which he attributed to the change to the vegan diet which contained beans twice daily. Plaintiff began eating regular meals to alleviate the gastrointestinal pain. On November 24, 2011, Plaintiff submitted another request for a kosher diet, stating that (a) the consumption of the vegan diet was causing him intestinal problems; (b) Muslims could consume a kosher diet in lieu of a Halal diet; (c) he was not a vegan; and (d) he wanted to purchase commissary items that were Halal or kosher. On November 28, 2011, medical staff recommended Plaintiff receive a colonoscopy to assess whether his gastrointestinal problems were due to polyps or scarring in the colon and prescribed medication. On December 2, 2011, Plaintiff's request for a kosher diet was denied due to "'non-compliance' with the vegan 'diet agreement'" based on his consumption of regular meals after suffering gastrointestinal distress from eating the vegan diet.

In addition to these factual allegations, which were included in the First Amended Complaint, Plaintiff alleges new facts. (Doc. 25 at 15-16) Plaintiff states he received a colonoscopy in January 2012 and was advised to avoid foods that give him gas, including the beans in the vegan diet. Plaintiff contends that, despite providing this information to

Defendant Lind, Lind continued to refuse to provide a kosher diet. Similarly, on March 3, 2012, Plaintiff received a grievance appeal response from Defendant Ryan, stating the medical issues have to be resolved before considering Plaintiff's religious reason for a different diet.

Plaintiff further alleges that, during an interview with Defendant Lind on March 24, 2011 to determine if Plaintiff should receive a kosher diet, Plaintiff explained the flatulence he experienced with the vegan diet disrupted his prayers because, according to Plaintiff, ASWJ Muslims "must re-initiate ceremonial cleansing each time we pass gas." Plaintiff claims he explained to Defendant Lind that, as a result of the medical issues and the impact on his prayers, Plaintiff was unable to have vegan meals, and a kosher diet satisfied the requirements of his faith. Plaintiff contends that, after the interview on March 28, 2012, Defendant Lind denied his request for a kosher diet because Plaintiff failed to provide a religious reason to grant the request and this was a medical issue, not a religious issue. Finally, Plaintiff alleges that, to date, Defendant Lind has denied all requests by ASWJ Muslims for religious diets, requiring them to consume meats forbidden by their faith.

In the prior screening order, the Court found Plaintiff failed to state a claim because he did not "allege facts to support that the gastrointestinal distress from eating the vegan diet substantially burdened his religious exercise." (Doc. 10 at 8) Here, the Court finds Plaintiff's additional allegations cure that deficiency. Plaintiff adequately alleges how the effects of the vegan diet, specifically the large quantity of beans in the diet, affected his ability to perform prayers. Moreover, Plaintiff's new allegations more closely align with the Muslim inmate's allegations in *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008), wherein the Ninth Circuit found the allegations implicated the Free Exercise Clause. In *Shakur*, the inmate alleged his adverse health effects from the vegetarian diet he was receiving interfered with his religious activities and a kosher diet would be consistent with his religious faith. *Id.* For these reasons, the Court finds Plaintiff's allegations of a First Amendment, Fourteenth Amendment and RLUIPA violations against Defendants Linderman and J. Lind for denying Plaintiff a religious diet are sufficient to state a claim. Defendants Linderman and J. Lind will,

therefore, be required to answer Count Three.

**C. Count Four**

Plaintiff alleges in Count Four that Defendants Ryan, Krause, Linderman and J. Lind violated the Free Exercise Clause of the First Amendment, the Equal Protection Clause, and RLUIPA by prohibiting Plaintiff from openly wearing a "kufi," which, according to Plaintiff, is mandated for male adherents of the ASWJ Muslim faith. (Doc. 25 at 17-20) Plaintiff alleges that, as an ASWJ Muslim, he is required to wear the kufi at all times other than in bed and not wearing a kufi is sinful. Plaintiff states he has provided signed documentation from a counsel of theologians, authorities on Shariah law, explaining the views of ASWJ Muslims differ from other Muslim sects in belief and practice.

Plaintiff alleges each time he requested to wear his kufi openly, Defendants asserted that ADOC policy allows Muslims to wear a kufi at religious ceremonies only. Plaintiff, therefore, claims he is being denied a fundamental tenet of his faith. Plaintiff further explains how, through the inmate grievance system, he submitted multiple requests, including alternative requests he be allowed to wear a kufi any time other inmates are allowed to wear prison-issued ball and stocking caps, or he be allowed to wear it underneath prison-issued ball and stocking caps. Plaintiff states that, in verbal and written responses from Defendants Linderman, Krause and J. Lind, his requests were denied. He, therefore, claims these three Defendants, and Defendant Ryan, are burdening Plaintiff's free exercise of this basic tenet of his religion and treating him differently than other inmates.

In the prior screening order, the Court found Plaintiff failed to allege facts to support his religious exercise was substantially burdened by the inability to openly wear his kufi, including where, when, how and by whom. (Doc. 10 at 9) Specifically, the Court explained Plaintiff failed to allege facts to support when and where he sought to wear a kufi outside of religious ceremonies. (*Id.*)

The Court finds Plaintiff's allegations in Count Four are sufficient to state a claim for a violation of the Free Exercise Clause of the First Amendment, the Equal Protection Clause and RLUIPA. Plaintiff's additional allegations in the Second Amended Complaint cure the

factual deficiencies in the First Amended Complaint. Plaintiff now explains he is required by his faith to wear a kufi at all times except in bed and failing to do so is sinful. Thus, the Court finds Plaintiff sufficiently alleges the denials of his requests by Defendants Linderman, Krause and J. Lind imposed a substantial burden on his ability to exercise a fundamental tenet of his religion. Even though Defendant Ryan is also named in Count Four, Plaintiff fails to allege any actions taken by him. As a result, only Defendants Linderman, Krause and J. Lind will be required to answer Count Four.

**D. Count Seven**

Finally, in Count Seven, Plaintiff alleges Defendant Ams knew of, and disregarded, an excessive risk to Plaintiff's safety thereby exposing him to a substantial risk of harm in violation of the Eighth Amendment. (Doc. 25 at 29-30) Plaintiff alleges Defendant Ams provided to an inmate a page from a pre-sentence report in Plaintiff's criminal case that contained confidential information about Plaintiff's involvement in the death of a two-year-old child. The Court addressed this claim in the prior screening order and required Defendant Ams to answer the allegations. Because Plaintiff presents the same claim in Ground Seven of the Second Amended Complaint, the Court will again direct Defendant Ams to answer the claim.

**V. Summary and Service of Defendants**

Based on the foregoing, the Court finds Count Two of the Second Amended Complaint states a plausible claim against Defendants Ryan, Krause, Linderman and J. Lind; Count Three states a plausible claim against Defendants Linderman and J. Lind; Count Four states a plausible claim against Defendants Linderman, Krause and J. Lind; and Count Seven states a plausible claim against Defendant Ams. Accordingly, the Court will order service upon Defendants Ryan, Krause, Linderman, J. Lind and Ams.[3]

---

[3] The District Court's docket reflects Defendant Ams, the only Defendant upon whom service of the First Amended Complaint was ordered, signed a Waiver of Service of Summons on June 14, 2012. (Doc. 21) As noted above however, Defendant Ams has not appeared in this action in response to the First Amended Complaint. The Court will, therefore, order Plaintiff to complete a new service packet for Defendant Ams.

**VI. Warnings**

**A. Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

**B. Address Changes**

Plaintiff must file and serve a notice of change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C. Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document he files. Fed.R.Civ.P. 5(a). Each filing must include a certificate, stating a copy of the filing was served. Fed.R.Civ.P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notices to Plaintiff.

**D. Possible Dismissal**

Plaintiff should take note that if he fails to timely comply with every provision of this Order, this action may be dismissed without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (district court may dismiss action for failure to comply with any order of the Court).

**E. No Further Amendments Without Leave of Court**

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend his pleading "once as a matter of course at any time before a responsive pleading is served . . ." Because Plaintiff has now amended his complaint more than once, he may not file another amended complaint without first seeking permission from the Court.

**IT IS ORDERED** as follows:

(1) Counts One, Five and Six are **dismissed** with prejudice.

(2) Defendants Donnally and C.O.II C. Lind are **dismissed** without prejudice.

(3) Defendant Arizona Deparment of Corrections is **dismissed** with prejudice.

(4) Defendants Ryan, Krause, Linderman and J. Lind. must answer Count Two of the Second Amended Complaint.

(5) Defendants Linderman and J. Lind must answer Count Three of the Second Amended Complaint.

(6) Defendants Krause, Linderman and J. Lind must answer Count Four of the Second Amended Complaint.

(7) Defendant Ams must answer Count Seven of the Second Amended Complaint.

(8) The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint, doc. 25, this Order, and both summons and request for waiver forms for Defendants Ryan, Krause, Linderman, J. Lind and Ams.

(9) Plaintiff must complete[4] and return the service packet to the Clerk of Court within 21 days of the date this Order is filed. The United State Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(10) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 120 days of the filing of the Second Amended Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed.R.Civ.P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(11) The United States Marshal Service must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(12) The United States Marshal Service must notify Defendants of the commencement

---

[4] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The United States Marshal Service must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or it is not returned by a Defendant within 30 days from the date the request for waiver was sent by the United States Marshal Service, the United States Marshal Service must:**

(a) personally serve copies of the Summons, Second Amended Complaint and this Order upon Defendants pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the United States Marshal Service for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13) **A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, Service, not the Plaintiff**.

(14) Defendants must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(15) Any answer or response must state the specific Defendant(s) by name on whose behalf it is filed. The Court may strike an answer, response, or other motion or paper that does not identify the specific Defendant(s) by name on whose behalf it is filed.

(16) This matter is again referred to Magistrate Judge Lawrence O. Anderson pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for further pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

**IT IS FURTHER ORDERED** that counsel and any unrepresented party must comply with the Rules of Practice for the United States District Court for the District of Arizona ("Local Rules"), as amended on December 1, 2012. The District's Local Rules may be found on the District Court's internet web page at www.azd.uscourts.gov/. All other rules may be found at www.uscourts.gov/rules/. The fact that a party is acting *pro se* does not discharge a party's duties to "abide by the rules of the court in which he litigates." *Carter v. Commissioner of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986).

**DATED** this 25th day of July, 2013.

Stephen M. McNamee
Senior United States District Judge